Council, whenever you are ready, you may proceed. May it please the Court, Counsel. My name is Janna Rine and I represent John Toigo and his next friend Michael Toigo in this collection matter brought by Godfrey Healthcare. Mr. Toigo seeks to reverse a default judgment in a 60-day stay or order vacating a 60-day stay and he also seeks to reverse the denial of the motion to vacate as an alternative to those. There are four reasons which justify reversal of the default judgment in this case. First, there was an answer on file which included, it was verified and included affirmative defenses and a jury demand. I was very interested in the fact that affirmative defenses contained a jury demand. I've never seen that. Affirmative defense is not a counterclaim. Why would there be a jury demand on affirmative defenses? He requested, he sought a jury demand on his defense. You either get a jury demand or you don't. I mean a jury or you don't. Had the plaintiff not asked for a jury? Right. Okay. All right. So he was asking for the jury. He was asking for the jury. Okay. And so this verified answer, not only the answer itself prevented a default judgment, but the fact that it was verified presented unresolved fact issues which prevented summary disposition of the case. And the second reason that justifies reversal of the underlying default judgment is the jury demand which would have required that the defendant be notified prior to entry of the judgment. Well, I never saw where they asked for a default judgment to begin with. There was an oral motion for a default judgment raised at the June 2nd hearing on the motion to reconsider. But that was without notice. Right. Right? Yes. In their pleadings they weren't asking for a default judgment. They were asking to set aside the order. Yes. So this is an oral motion for default judgment that the court granted without notice. So the reason that the court granted the motion for default judgment stated in the order is that there was a, that the defendant had failed to enter a substitute appearance within 21 days of leave of counsel to withdraw. And that's not Rule 13, Section 1301 does not allow, does not construe these appearance or failure to appear to be mean substitute appearance. So the rule 13 says within 21 days you have to either substitute counsel or enter an appearance, right? Yes. Yes, it does. But it also provides a remedy in case there's failure to enter a substitute appearance. And that remedy is that notice will be sent to the last known address of the unrepresented party. In this case, Godfrey Health Care admits that it did not send notice to the unrepresented party. And the basis of a default judgment cannot be failure to enter a substitute appearance, especially in light of Rule 13. Also, the court's order that Godfrey Health Care was seeking to have reconsidered provided the last known address and ordered Godfrey Health Care to send notices to that address. And so there was really no reason for them to have to send the notice to the former counsel. And then the fourth reason that Justice Breyer... I was interested, though, because the attorney's motion to withdraw his counsel was May 3rd. A court order was entered that day. But then on May 5th, after the order was evidently entered, and correct me if I'm wrong, some pleadings were filed by the law firm of Meyer Jensen. And it may have been that the beginning paragraph was just a repeat. I don't know. Because it seems like on the 12th, there was a notice to the client that we've withdrawn. So I was confused by the timing of that. Do you know anything about that? I personally don't know anything about that other than what the records... Did you see that in the record, though? I did. The notice to the defendant's counsel, or the plaintiff's counsel, was dated May 9th. The answer was filed on May 7th, and I didn't see in the record when the defendant's... Mr. Toygo was notified of the withdrawal as counsel. We agree, though, that the order granting leave to withdraw was May 3rd, and the stay was May 3rd. Right. But that doesn't justify a default judgment or denying my client a trial on the merits. And I see the notice to withdraw as counsel was May 12th, not the 9th. But anyway, go ahead, please. The certificate of service was May 9th, so my report might have filed it on May 12th. And that's what I'm concerned about. I'm thinking that perhaps Madison County documents got filed, and there was some delay in the clerk's office. Because the service is May 9th to the counsel, but the actual file stamp was May 12th. So it seems as though we have some delay going on. That might have been, but I don't understand what your question is, I guess. My question is this new question. Do you know if the plaintiff was given notice of the motion to withdraw? The plaintiff was given, eventually received notice that there was a motion to withdraw. In their pleadings, though, they claimed that they didn't get prior notice. And the defendants claim that. Plaintiffs claim that the defendants did not give them notice that the counsel was going to withdraw. The certificate of service states that there was notice given on May 2nd that counsel was going to withdraw. But even if counsel did not receive prior notice of the motion to withdraw, counsel has not filed a cross appeal of the trial court's denial of the motion to withdraw. So the 60-day stay was another basis for reversing this underlying default judgment. Because the vacating the 60-day stay and at the same time entering a default judgment that would have required in order to prevent the default judgment, then Mr. Toygo had acted prior to that time to enter substitute counsel is an abuse of discretion and justifies the reversal of the underlying default judgment. Alternatively, Mr. Toygo argues under Section 1301E that the denial of the motion to vacate should be reversed and raises those four reasons in support of that argument as well. But in addition, he argues that Godfrey Health Care is confusing Section 1301 and 1302. Godfrey Health Care is seeking to say that while there was a default order entered without notice and that that's appropriate under Section 1302, and a default order is a fact finding by the trial court that a default had occurred. And if Godfrey Health Care is proceeding to default judgment without notice based on 1302, that's not appropriate because that default order under 1302 can eventually lead to a 1301 default judgment at the discretion of the trial court or the trial court can vacate under 1301E prior to judgment. In this case, under 1301E, also after judgment is entered, the court can entertain a motion to vacate. But 1301A discusses what happens when an answer has been filed, and that requires certain procedures to precede the judgment that weren't followed in this case. So Godfrey Health Care's reliance on 1302 is not appropriate because they didn't seek a finding of default and there was no basis for a finding of default. Also, a lack of notice by itself can justify a motion to vacate a default judgment, especially in this case where there's prejudice. And Godfrey Health Care's position is that Mr. Toygo, in his affidavit in support of the motion to vacate, only alleged that there was failure to receive notice of the motion to reconsider and the notice of hearing, but the order states that the court considered the pleadings and the evidence and the argument of counsel, and the pleadings show that there was a verified answer from the defenses and jury union. There was no counter affidavit filed by Godfrey Health Care. The certificate of service shows that Godfrey Health Care sent the notice to the former counsel. Did Godfrey Health Care send anybody a notice of their affidavit of damages? I don't remember what the certificate of service stated, but the order that entered the default judgment ordered that Godfrey Health Care sent notice to the defendant, and it also ordered that the affidavit of damages be incorporated into the judgment. So it's my understanding the defendant received notice of all of those things, but it had already been incorporated in the judgment, so he thought that the judgment be vacated. Also in the record that was available to the trial court that he was supposed to have considered when he considered the steps leading up to the judgment was a January 24th protective order allowing and requiring that a deposition be rescheduled. Then there was also a February 27th protective order that required the deposition to be rescheduled. There was a March 7th certificate of service showing that written discovery responses had been served. There was a week later a Godfrey Health Care's motion to compel depositions that did not mention noncompliance with written discovery, and there was a March 3rd and May 3rd order of staying proceedings which required that depositions be rescheduled. So the unverified motion to reconsider did not allege any violation of a court order or a discovery rule and did not justify any kind of discovery sanction. Which order did you say required the plaintiff to send further notice after the default? The default judgment required that the default judgment be sent to Mr. Twigo, if I remember correctly. That was June 2nd. I don't see that in here. That's okay, I'm just trying to figure it out. Elizabeth Parker was the person representing Mr. Twigo. What is Mr. Twigo's disability? He's 95 years old and he suffered a stroke and was in the nursing home. Is he still in this facility? He's in a different facility now. Do you know if they billed Medicare and Medicaid for this or were they trying to seek charges going around Medicare and Medicaid? There are Medicare and Medicaid issues in the case that have not yet reached the merits. And he is a private payer. He's a private payer.  The damages alleged in the complaint are supported by documents that conflict with each other and that are not clear. So there's a fact issue about the damages and there's an affirmative defense that disputes the damages. Well, I saw there were many affirmative defenses regarding the quality of care, but I also saw that it seems there's a question as to whether Godfrey bought the rights and interests of the prior nursing home. Is that what you're talking about? And the timing and which receivables went to which entity and whether the receivables were earned or already paid. All of that's in dispute on the merits. But if we have time, I'd like to discuss the motion to strike. Godfrey Healthcare has appended a document to their appellee brief and has requested judicial notice. This document is not sworn or certified under Rule 191. And it's also that Godfrey Healthcare also doesn't provide a citation where the court can readily verify this court proceeding. And they admit that it was not presented to the trial court. But they allege that even though it wasn't presented to the trial court, it's eligible for judicial notice. And Mr. Togler has provided an affidavit in support of this motion under Rule 361 to show that it is not relevant or helpful and it is not dispositive. And what is the specific issue? Can you talk over the drain? So the issue is whether judicial notice can be taken of this court proceeding that Godfrey Healthcare has appended to their argument. It's not relevant or helpful to the disposition of this case. So the affidavit supplied by Mr. Togler in support of his motion argues that it doesn't aid the court. So in order to aid the court, it has to be helpful, it has to be relevant. The information that was supplied by Godfrey Healthcare is neither of those. It's also not dispositive. So usually an appellate court will take judicial notice of a court proceeding if it assists in disposition of the underlying matter or the appeal. In this case, it doesn't, it would not move toward disposition of either of these things. Finally, it's evidentiary matter that is not helpful. The issue you're talking about is the disciplinary proceedings in Nevada. And they pertain to somebody named Michael Toygo. He's the next friend in this case. So why is that relevant? It's not. That's what he's saying. Also, they're offering it to show that it's a bad act. They state in their brief that it's to show a propensity to fail to answer a complaint and allow default, to show a propensity to fail to follow a case, and to show a propensity to engage in dilatory tactics. And all of that is not admissible, but it's also not the province of an appellate court to weigh and determine evidence or to make evidentiary rulings under the evidence rule. So if this were part of the trial court, we would be arguing the evidence rule that prior bad acts cannot be considered for showing any kind of propensity. We said it's a bad act. We're not as to the individual who incurred the. It's completely not admissible. It's not admissible, but that's why Michael Twigo is arguing that it's credit. They're offering it as evidentiary matter that's not within the province of the appellate court to decide. It should have been brought before the trial court. And so that's why he's asking that this document be stricken. It has nothing to do with this case. And even if it is not a bad act, so he's provided in his affidavit that it wasn't a bad act, but even if it were a bad act, it's not admissible to show what Godfrey Healthcare seeks to show, and this is completely not appropriate to bring in an appellate court. It's just not. It's not appropriate in the trial court either, but it's really not appropriate in the appellate court. There's no provision for this. So they've objected to Michael Twigo's affidavit on the basis of hearsay about his recount of a statement made by a Godfrey Healthcare employee which falls within a hearsay exception, and then also they say it includes medical opinion, but he's using medical terminology to describe a group of symptoms that he observed, and so it isn't offered as a medical opinion of any particular diagnosis. And so Godfrey Healthcare's objection should be overruled, and this document should be stricken from the record. So you're asking us to grant your motion to strike? Yes. Okay. And what relief are you asking for in the principal case? We're asking that the default judgment be overruled. The default and the monetary judgment because they were incorporated. Right. So the entire judgment. The entire judgment be overruled including the vacation method. Vacated. You want it vacated. We want it vacated, be reversed, and the 60-day stay be vacated and reversed. And alternatively he ordered that the 60-day stay be vacated, and we ask that that order, that portion of the order be vacated and reversed. So you want the 60 days reinstated upon remand? Yes, mainly because we've appealed it primarily because of the confusion it adds to the order. Well, is Mr. Troigo prepared to get counsel once this is reinstated, if it would be remanded and reinstated? Yes. So he would need time to get counsel? He doesn't. If the court decides not to grant the relief on the 60-day stay, he's prepared to proceed on the merits. The reason we are seeking reversal of the order vacating 60-day stay is because of the confusion that entered in the case. Thank you, counsel. Counsel? May it please the Court. Briefly, I'll start with the motion to strike, just because that was touched upon. The purpose of bringing to the Court's attention that Michael Troigo was an attorney was simply to refute the due diligence or the lack thereof. On page 17 of our response brief, we just simply say, the defendant's failure to exercise diligence to independently follow the progress of this case is especially notable, given that Michael Troigo, the next friend, is a very experienced and veteran attorney of over 40 years. And I think that's a very important point. You know what? Did you bring that up orally before the trial court when you asked for a default judgment? I did not personally, but yes. Did anybody from your law firm? Yes, and that's why I believe it's important, because – Is it in the transcript of proceedings? No, there were no transcripts. Is there a transcript? Not to my knowledge. Is there a bystander's report? I'm sorry? Do you know what a bystander's report is? I'm afraid I don't, Your Honor. Well, I'm not here to explain it to you. No, that's fine. But there's nothing in the record to indicate how that default judgment got entered, except the order we have from Judge Matosian, who says it was orally made, right? Yes, correct. So, as far as we know, nobody said anything about Mr. Troigo's brother, right? Where is that in the record? Where is it in the record? Well, Michael Troigo is the next one. Where is Michael Troigo's disciplinary issues in the record? It's not. Good. Then what are you bringing this Court's attention for? No, and it's just – I mean, on the merits of the motion to strike, that's – Your pleadings have a lot of very caustic language in them, which is not favored by an appellate court. Do you realize that? I do, Your Honor. Okay. Let's go to the facts of the case, if you would, please. Sure. Tell me why your law firm would give notice to a former law firm when there is a court order saying the law firm has been allowed to withdraw? Yes. The back history is fairly important to understand why there was a motion, an oral motion for default judgment. And, in fact, we had contested the withdrawal because of the number of defects and failure to comply with Rule 13. Attorney Parker had filed on May 3rd the motion to withdraw, the motion for a stay, and another motion to dismiss that had previously been denied on the same grounds. On May 3rd, the same day that the motion to withdraw was filed, apparently she also walked in front of the judge and had it entered on the same day. And the record will show that no notice of hearing was ever filed. So that's one defect with Rule 13. Okay, but that came – your knowledge of that came after the order had been entered. Correct. So according to the record of proceedings as they existed on the day you filed – not you, but your law firm – filed the motion to reconsider. Yes. At that moment – May 18th. There was a court order that said notices to be given to the individual and they gave – the court order gave its address. You're right, if I may. Is that true? That is true. You just didn't like the court order. No, the May 3rd withdrawal order was the one that actually required Defendant Toygo to file an appearance within 21 days. It should. It's Rule 13. Well, and Defendant Toygo failed to do that. And the whole basis of the motion to reconsider was – Well, hadn't the 21 days expired at the time you filed the motion to reconsider? No, you're right. Right. The 21 days had not even expired at the time you filed – your firm filed the motion to reconsider. Right. So under the court order, he still had that 21 day – he still was in that 21 day period, right? Yes. So why didn't you give him notice at his home address? Well, Your Honor, that's part of the problem. The address actually came in that order. There are three addresses that apparently are – John Toygo has that address on Ashby Lane in Godfrey, Illinois. And then we subsequently see the May 12th withdrawal – apparently it was mailed on May 9th and then it was filed on May 12th. Attorney Parker's notice to her client that she was withdrawing actually lists another address entirely. It lists Michael Toygo, the next friend. He's in that address. And then later in the record we see that Michael Toygo actually has a third address, a Ferguson – a Florissant, Missouri address. That's part of the – What effort did your law firm make to notify Michael Toygo at all? Through counsel because – No, there was no counsel at that time. She had withdrawn. A court order had been entered. What efforts did your firm make to give notice on this motion to reconsider? No. The answer is none, right? Correct. Well, and we can see that in our critic. It was based on the belief that the withdrawal was improper. Therefore, especially within the 21-day period, I saw that. I saw your justification. You said, we thought the court order was wrong. Yes, Your Honor. I found that interesting only because – does that mean just because you think a court order is wrong you can violate it? So you don't have to follow it if you think it's wrong? Well, the very basis of the motion to reconsider was to set aside that order to withdraw. No. There was a court order in place, and you didn't follow it, right? Yes, Your Honor. And then, knowing that the law firm had withdrawn, somebody from your firm decided, oh, well, since we're here before the judge, we'll just make an oral motion for default, right? Somebody did that. Your Honor, that's actually, I think, a distinct and separate issue. Aside from the fact that the motion to reconsider and the notice of the June 2nd hearing was not mailed to Michael Toga, what was mailed to Michael Toga was the court's May 2nd order requiring Michael Toga to file an appearance within 21 days. When that time ran on May 24th, he's already in default at that point. Whatever happens after May 24th, Michael Toga received that court order and from that point on is in default. And you would have had the right to file a motion for default judgment and give him notice pursuant to the court order, even if the address was incorrect, right? You would have had that right. Your Honor, it's... Would you have had that right? It's our position that once the litigant was in default, no notice was required. Really? Yeah, in fact... So you can take people's property without due process of law? If they are in default, then a notice is not required. And that's the... Can you do it when you have unclean hands, sir? When you violated a court order, can you take people's property without due process when they are unclean hands? I'm afraid I'm not prepared to answer that. But if I can explain... I didn't think you would be. You violated a court order. And then your pleadings attempt to smear Michael Toga because of a disciplinary proceeding that wasn't ever before the court. No, Your Honor, it was simply raised because of the due diligence that a lawyer... It's not in the record. It has nothing to do with this case. Your Honor, I... This case has to do with the default judgment. And even when your firm filed for an affidavit of damages, where did you send the notice? To the former lawyer. How many days later was that? And you're still sending it to the former lawyer. Your Honor, if I can address that... Absolutely. Why did you do that? I do believe that Attorney Corker had been forwarding everything on to Michael Toga. Otherwise, he wouldn't have known about a July 2nd motion to make sure... That's not the point. She had been allowed to withdraw. And that was true even after your motion was heard. Even after your motion was heard, trying to get the court to reverse an order allowing an attorney to withdraw. Even after that, your firm, in order to prove damages, did not send the affidavit of damages to Mr. Toga. It was sent where? To Attorney Corker. To the lawyer of record, who had been allowed to withdraw, and who your motion was denied. So now we have a valid court order, even in your attorney's opinion, and you still sent it to the prior lawyer. Yes. So do you think you can say due process after violating a court order and a judgment against somebody? Really? Your Honor, as you pointed out earlier, I think there was a bit of ambiguity in that the order to withdraw was entered on May 3rd. I'm talking about after the motion to reconsider was entered. After it was heard. Yes. According to the documents I have in front of me, the affidavit for damages was sent to the prior lawyer. Correct. That's after your motion was heard. Correct. And we have consistently maintained and still believe that Attorney Corker was still the attorney of record. Well, what gives you the right to do that once a court has entered an order? Now we have two orders. Well, again, Attorney Corker is filing an answer on May 5th, and then subsequently filing an answer on May 8th. And then what's interesting is on the May 5th answer, we see that she's actually signing the verified denials, and then on the May 8th answer, which she personally signs, then we see Michael Toda actually signing the verified denials. So she's apparently trying to say that it was … What about after June 2nd, Mr. Wong? After June 2nd? I want to talk about after June 2nd. Yes. After the motion to reconsider was heard. Yes. Again, we … Where was the affidavit for damages sent? It was sent to Attorney Corker, Your Honor. And that was after June 2nd? That is correct, Your Honor. What was wrong with the order then about the attorney withdrawing? Was that heard? Well, the motion to reconsider was granted, and the relief requested in the motion to reconsider was to vacate the order withdrawing and the motion for stay. So by the court granting the motion to reconsider, I mean that was like formalizing the defective withdrawal that we contended from day one that it was erroneous, it was defective. And the very nature of the motion to reconsider was vacating the withdrawal order, eliminating the stay, and then proceeding. I was interested in your request, at least your allegations about how the discovery dragged on and on and on and you blamed it all on the plaintiff. It seemed to me that there were court orders being entered all the way along. And do you blame the court for that, too? No. In fact, I think that demonstrates the record. I mean, thoroughly demonstrates this is what should have been a very simple collections action. Well, it was simple if no one had entered their appearance because what they did is they contested your ability to collect for your client because you had a purchase from a prior corporation. And as you well know, in a contract action, the contract has to be attached to the complaint. That wasn't done in this case, right? Correct, Your Honor. So had no one appeared, you would have entered a default judgment and we would have just not even known about that part, right? Yes, Your Honor. But that violates the statute, too, because the contract was not attached to the original complaint, right? Correct, and that's why it was amended. And you're right that the court did enter a lot of orders, and again, I think that evidences the trial court's extreme patience, to be honest, and the delay tactics perpetuated by the defendant. The delay tactics were approved by Judge Matossian throughout the process. He was the one controlling the dates. You can blame it on whoever you want, but the fact is there are court orders allowing this. And the fact that you asked for sanctions, asked for sanctions against this 95-year-old plaintiff when the court is allowing these extensions of time, what do you think is the basis for sanctions there? Your Honor, if I can explain. Yeah, I want to know why these big sanctions are necessary. I mean, as counsel indicated, the issues are was the default judgment entered with authority and did the trial court err in exercising its discretion to deny the motion to vacate that? And I think that the procedural posture is very important to understand Judge Matossian's rationale as to why he, one, entered it, and then, two, six months later, refused to vacate it.  And, I think, in the case of the defendant, I think the defendant was in default and made an oral motion without notice. That's what I want to know. I really want to know that answer. I'm not sure you can provide it, but Xander Kleenix has a much better reputation than that. The defendant was in default by that point. And the case law you cited in the appellant's brief indicates that no notice is required once the party is already in default. I would agree if you have Kleenix. And if you get a notice prior to the default. There's generally a 24th order requiring the depositions of Michael and John Tobit to take place on February 15th. After another round of another emergency protective order and motion for extension, the depositions ended up getting pushed. And then we see there's a combined total of five between protective orders, extensions for discovery, and stays. Five attempts to delay the proceedings. We have a second February 27th court order saying that the depositions are going to take place shortly after the amended complaint file on the same day as February 27th. Do you believe that the court has the right to control its docket? Absolutely, Your Honor. And in this particular case, which you're calling disruptive delay, the court is obviously approving the order of its docket. Your Honor, I think you just hit the highlight of, I'm poorly articulating it, but what I think is the press of this case, that Judge Mentosin was, in fact, protecting his docket in that the last order, April 24th, he's now denied their motion to dismiss for however many times. And he's required them to answer the complaint, within 14 days, and then produce their deposition within 30 days. That's April 24th. They've now exhausted every creative delay tactic they can think of. So what do they do? May 3rd, they file a motion to withdraw counsel, don't give notice to anyone, and then ex parte obtain an order allowing counsel withdrawal. Yet another delay tactic. And that's why I was saying Judge Mentosin was very judicious and methodical in that even when the defendant filed the July 2nd motion to vacate, there's no diligence because then there's an intervening period of five months until November 2nd. Every opportunity for the defendant to present arguments as to why the defendant failed to comply with that May 2nd order, to file an appearance within 21 days, and given every opportunity to bring these issues to the court's attention, and all they say is, we didn't get notice of the June hearing. It never explains why, even by July 2nd, no appearance was filed. Well, they never got notice of the June hearing. That was the pretty important hearing, wasn't it? Right. That's when you entered the default against them. And, Your Honor, there's actually a case I think that's fairly on point to address an argument raised in the reply brief. I'm sorry, Berman, B-E-R-M-A-N versus Dempsey, D-E-M-P-S-E-Y. That's 257 Illinois Appellate 3rd, 496. Very strikingly similar circumstances in which the defendant, in that case, filed an answer, had prior counsel, counsel withdrew, and then the court ordered that you are to file a new appearance within 21 days. The defendant did not file an appearance, which is why our state statute, 1301D, says that it's want of an appearance or failure to plead. That's a distinction. Was there a motion for default filed in that case? Your Honor, I don't recall a particular decision. Well, then why is it relevant just to show 1301D is applicable here? Because the purpose of the appellant's argument that they were not in default was the fact that they had an answer on file. But, I mean, the statute clearly says want of an appearance or failure to plead. It's the failure to appear. And Rule 13 is actually the key word being or. Right. So you think if an answer is on file, they can still be in default because they didn't file Rule 13? No. Well, yes. But in this instance, I believe it's because the defendant fails to comply with the court order. We have Rule 13. And independent of Rule 13, the trial court has inherent authority. Judge Mutozian was well aware of the numerous delays that had occurred. And finally, April 24th, you are to produce your people for deposition within 30 days. So what do they do? Attorney Popper attempts to withdraw. And then she files two pleadings. And then they don't produce their witnesses. And then five months later, or six months later, they have a hearing on the motion to vacate that default judgment. And, again, Judge Mutozian. Are you saying the motion to vacate wasn't timely? I'm saying it's further evidence of a lack of diligence. Are you saying the motion to vacate wasn't timely? No. It was timely to file on July 2nd. So how do you know what the delay was caused by? Am I to assume that you're just giving me facts? Is that in the record, that they caused the five-month delay? Or was it the court's docket? I mean, how am I supposed to know what the five months was caused by? Tell me where in the record I'm going to find that. Your Honor, that's the point I'm attempting to make, is that it's the defendant's burden to establish a good cause in exercising diligence. But you're blaming them. You keep throwing all these alphabets at them about blaming them for this, blaming them for that. Where do I see that in the record? Where am I going to see that in the record except date one, date two? The motion practiced through the series of emergency protective orders motions for discovery. That's on your side. No, that's the defendant filing those repeated motions to delay the depositions time and time again. No. Which the court granted. Correct. And that's why I think Judge Matuzian filed a failing violation of the April 24th order. Excuse me. I'm talking about this five-month delay that you want us to infer their lack of diligence. Where am I going to see that? Nowhere, right? Your Honor, perhaps I was projecting that if I ever had a client that was in default, I myself would have delayed five months because of that. Well, that really doesn't matter here, does it? No, but again, it's not the plaintiff's burden to establish that. It's the defendant's burden. Then you can't throw around epithets like that. You can't ask this court to assume those kinds of things. It's improper. Okay. Please proceed. Thank you, counsel. First, Godfrey Health Care argues that my client was in default because it failed to comply with the requirement to provide substitute counsel within 21 days. But the case was stayed by court order at the same time that the order on withdrawal was entered. So the 21 days was stayed also. There was no reason for that 21-day requirement because even the motion for the stay was for the reason of allowing my client to provide substitute counsel. So he wasn't in default. And there's no case law that supports the idea that someone is in default for failing to provide a substitute appearance within 21 days. The remedy under the statute is that notice is sent to the last known address. So also the case cited by Godfrey Health Care, the Dempsey case, that case involved Section 1302, but in that case, notice was sent to the defendant. In this case, the notice was not sent to the defendant. In that case, the court held that there was no prejudice because the defendant received notice. In this case, the record doesn't indicate that Mr. Toygo received notice or that notice was sent. And there was no notice, no motion to supplement the record. So that's all I have. Thank you, Your Honor. Thank you, Counsel. We appreciate the briefs and arguments. Counsel will take the case under advisement.